# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,    :    Case No. 2:15-cr-240
                                    Also 2:19-cv-3863

                                      District Judge Edmund A. Sargus, Jr.
- vs -                             Magistrate Judge Michael R. Merz

FREDERICK A. McSHAN,

        Defendant.    :

## REPORT AND RECOMMENDATIONS

This is an action on a Motion to Vacate under 28 U.S.C. § 2255 brought *pro se* by Defendant Frederick McShan to obtain relief from his conviction in this Court on charges of conspiracy and money laundering. It is before the Court on McShan's § 2255 Motion (ECF No. 489), the Government's Response (ECF No. 493), and McShan's Reply (ECF No. 494).

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District. It remains for final disposition before District Judge Sargus.

1

**Litigation History**

McShan was indicted with six others on October 22, 2015, and charged with conspiracy to distribute heroin (ECF No. 20). The grand jury returned a Superseding Indictment on February 4, 2016 (ECF No. 84). The case was tried to a jury in March 2017 and the jury returned verdicts on March 10, 2017 (ECF Nos. 312, 315). McShan was sentenced on March 12, 2017 (Judgment, ECF No. 413) and he appealed to the Sixth Circuit (ECF No. 415). That court affirmed the conviction. *United States v. McShan,* 757 Fed. App'x 454 (6th Cir. Nov. 30, 2018), *cert. denied*, 139 S.Ct. 2032 (2019). McShan subsequently filed his Motion to Vacate on September 3, 2019, within the time allowed by the statute of limitations.

McShan pleads the following grounds for relief:

> **Ground One:** Ineffective Assistance of Appellate Counsel
>
> **Supporting Facts:** Appellate counsel failed to develop McShan's double jeopardy claim based on the reimpaneling [sic] of the jury.
>
> **Ground Two:** Reempaneling the jury was a violation of the Double Jeopardy Clause
>
> **Supporting Facts:** The Court erred by reempanelling the jury, resulting in a void first verdict and a null second verdict.
>
> **Ground Three:** The Court lost jurisdiction once the jury [was] discharge[d].
>
> **Supporting Facts**: The Court lost jurisdiction when an [sic] jury is discharge[d]. The Court can't reopen a case an [sic] fix any error once the jury [is] discharge[d].
>
> **Ground Four:** [Ineffective Assistance of Counsel]

> **Supporting Facts:** My lawyer was ineffective for not making an issue to argue double jeopardy. To be charged and found guilty of the same charge is double jeopardy if both conviction[s] is [sic] a lesser and one a greater offense is the same for double jeopardy.
>
> **Ground Five:** Due Process Violation (Fifth Amendment)
>
> **Supporting Facts:** Conspiracy suppose[d] to be as a whole one amount for everyone in the conspiracy for sentence purpose. Did not raise this in my appeal because my lawyer ineffective counsel.
>
> **Ground Six:** Ex Parte Communication with Discharge[d] Jury due process violation an[d] 6[th] Amendment.
>
> **Supporting Facts:** Any private contact with a jury if not made in pursuance of known rules is prejudicial. Judge talk[ed] to the jury private without counsel. That was an ex parte communication.

(Motion, ECF No. 489, PageID 4451-57.) The Motion to Vacate has an attached copy of part of the Sixth Circuit decision, an excerpt from the trial transcript, a two-page Memorandum of Law on ineffective assistance of counsel (PageID 4475-76), Defendant's Affidavit (PageID 4477-83) a second Affidavit of Defendant (PageID 4484-88), another Memorandum of Law on lack of jurisdiction (PageID 4489-96), a Notice of Void Judgment (PageID 4497-4503), a Certificate of Service (PageID 4504), a Memorandum of Law on due process under the Fifth Amendment (PageID 4504-06), and a Memorandum of Law on *ex parte* communications (PageID 4507).

In its Answer, the United States invokes the law of the case doctrine to preclude reconsideration by this Court of claims already considered and rejected by the Sixth Circuit on direct appeal (ECF No. 493, PageID 4516-18). The Government defends against McShan's ineffective assistance claims on the merits. *Id.* at PageID 4518-20.

In his Reply McShan argues the Government has misconstrued his Motion and mischaracterized the procedural history of the case. He reminds the Court that as a *pro se* litigant,

he is entitled to a liberal construction of his pleadings. When the sections of his Motion are read together, he asserts, "it is easy to see that movant has alleged that his appellate counsel was ineffective in arguing the re-poling [sic] issue." (ECF No. 494, PageID 4522). McShan discusses at some length his double jeopardy argument and precedent requiring reversal of a conviction if there is prejudice from a judge's *ex parte* communication with the jury. He concludes by suggesting an evidentiary hearing is required. *Id.* at PageID 4527.

# Analysis

In describing the relevant facts about the return of verdicts, the Sixth Circuit wrote:

> Following a five-day trial, the jury found Frederick and David guilty of all charges. The district court announced the verdicts in open court, specifically stating, "On Special Verdict Form No. 1, having found . . . Frederick . . . guilty of the charge of conspiring to possess with intent to distribute heroin, We, the Jury, find, check one, *100 grams or more* of heroin." (Emphasis added.) As to Special Verdict Form 2A, the court recited, "[H]aving found . . . David . . . guilty of the charge of conspiring to distribute heroin, We, the Jury, do unanimously find beyond a reasonable doubt the conspiracy involved a quantity of, and the box that is marked is *less than 100 grams* of heroin." (Emphasis added.) The district court then proceeded to poll the jury. Thereafter, the jury was excused (4:50 p.m.) and asked to wait in the jury room, so the judge could personally thank the jurors for their service. The court had been in recess for 14 minutes (4:51 p.m. to 5:05 p.m.) when the jury was asked to return to the courtroom. Once the jury was reassembled in the courtroom, the district judge explained that the "jurors were taken directly from the courtroom to the adjoining jury room." And when the judge addressed the jurors, "an inquiry was made regarding the amount set forth in the verdict—Special Verdict Form No. 1A," which pertained to Frederick. The district judge then acknowledged: "It appears that I have misread in open court what is

4

actually very clear on the verdict form filled in by the jury and I want to reread this into the record." The judge then reread the special verdict forms for David and Frederick, according to which the jury had found David guilty of conspiring to possess with intent to distribute *less than* 100 grams of heroin (no change) and had found Frederick guilty of conspiring to possess with intent to distribute *1000 grams or more* of heroin, not 100 grams or more, as the judge had previously, but mistakenly, read. The court then re-polled the jury, which gave its assent. David objected to the re-polling while Frederick, who now challenges the jury re-polling, simply asked the court to clarify that defense counsel had not been present when the judge spoke with the jury in the jury room.

*McShan,* 757 Fed. App'x, at 456-57.

On appeal, McShan argued the trial judge lacked authority to re-poll the jurors, but the Sixth Circuit disagreed. The court continued:

> The parties do not dispute that, generally speaking, federal district courts have the inherent authority to re-poll a jury to correct an error in reading the verdict. *See Dietz v. Bouldin*, 136 S.Ct. 1885, 1891-93, 195 L. Ed. 2d 161 (2016). They do dispute whether the district court's exercise of that power was appropriate in this case.
>
> The common law rule was that once the judge discharged a jury, the jury could not be recalled to amend its verdict. *Dietz*, 136 S.Ct. at 1897 (Thomas, J., dissenting) (describing the common law rule). But, as Frederick acknowledges, it was "well-settled that a trial court merely using the word 'discharged' d[id] not negate the court's power to reconvene a jury." Appellant Frederick McShan Br. at 9 (citing *United States v. Rojas*, 617 F.3d 669 (2d Cir. 2010) and *Summers v. United States*, 11 F.2d 583 (4th Cir. 1926)). As the rule was described in *Summers*:
>
>> [A jury] may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within [the] control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has

5

> been impaneled is still under discussion by the court, without the intervention of any other business.

*Summers*, 11 F.2d at 586.

In *Dietz*, the Supreme Court rejected this test for civil cases, adopting instead a multi-factored "inquiry focused on potential prejudice." *Dietz*, 136 S.Ct. at 1896. But *Dietz* cautioned that its "recognition . . . of a court's inherent power to recall a jury is limited to civil cases only. Given additional concerns in criminal cases, such as attachment of the double jeopardy bar, we do not address here whether it would be appropriate to recall a jury after discharge in a criminal case." *Id.* at 1895. It is thus unclear whether *Dietz* meant to leave in place the common law rule in criminal cases, or whether, absent double-jeopardy concerns, *Dietz*'s potential prejudice rule should apply. Under either test, we have no difficulty concluding that there was no error here.

In *Rojas*, the Second Circuit adopted the common law rule set forth in *Summers*. *Rojas*, 617 F.3d at 677 (quoting *Summers*, 11 F.2d at 586). Applying this rule, the court in *Rojas* found it "significant" that, while the jury in that case "had technically been declared 'discharged' by the court, it had not dispersed. The jurors were therefore not exposed to 'outside factors,' which might 'render[] the reliability of any poll on recall problematic.'" *Rojas*, 617 F.3d at 678 (quoting *United States v. Marinari*, 32 F.3d 1209, 1213 (7th Cir. 1994)). The court held that, under those circumstances, the jury "'retain[ed] its function[],' and that it was proper to return it to the courtroom for a re-reading of the verdict form and for a re-polling." *Rojas*, 617 F.3d at 678 (internal citation omitted and alteration in original).

This case is *Rojas*'s twin. In *Rojas*, a courtroom deputy, reading aloud the jury's written verdict, mistakenly omitted the word "base" and instead stated that the jury had found the defendant guilty of a conspiracy involving distribution of "five grams or more of a mixture and substance containing a detectable amount of *cocaine*." *Id.* at 673. The jury was then polled, discharged, and returned to the deliberation room to await the thanks of the court. *Id.* While the jury waited, counsel alerted the judge to the mistake. *Id.* Over defense

counsel's objection, the jurors were reassembled, provided with an explanation of the error, re-read the verdict form, and re-polled. *Id.* The jurors gave their assent to the correct reading of the verdict. *Id.* The Second Circuit found no error:

> [N]otwithstanding the fact that the jury assented to the improperly read verdict form when polled for the first time, the initial misreading of the written verdict form in no way calls into doubt our conclusion that the actual verdict reached by the jury is reflected in the written form. Nor does the recitation error leave us with any uncertainty that the written verdict form reflects an uncoerced and unanimous jury verdict.

*Id.* at 677. We reach the same conclusion.

As in *Rojas*, this case involves a misstatement of the verdict, caught after the judge pronounced the jury "discharged" but before the jurors had left the deliberation room. The judge explained, on the record, that the jurors "were taken directly from the courtroom to the adjoining jury room." The delay between discharge and recall— fourteen minutes here, six minutes in *Rojas*—was brief. And there is no evidence that the jurors left the deliberation room or had the opportunity to "mingle" with or speak to anyone, other than the judge, after being discharged. Indeed, the judge explained at sidebar that the jurors "ha[d]n't talked to anybody but [him]."

When the jury returned, it was not to deliberate anew, but merely to correct an error in the court's recitation of their written verdict. We have little trouble concluding that this jury "remain[ed] an undispersed unit, within [the] control of the court." *Summers,* 11 F.2d at 586. Applying the common law rule, the district court did not err in recalling the jurors to correct an inadvertent error in the recitation of the jury's written verdict.

The parties focus their attention on *Dietz*. Applying the factors found relevant in that case leads to the same result. There is no evidence that "any juror [was] directly tainted." *Dietz,* 136 S.Ct. at 1894. As mentioned above, only fourteen minutes separated "discharge and recall." *Id.* There is no evidence that the jurors

7

"spoke[] to anyone about the case after the discharge," other than the judge. *Id.* Nor is there any indication of an emotional reaction to the verdict by the defendants or those in the gallery; and the jurors here never made it to the "corridors" to witness any other reaction. *Id.* Finally, nothing on the record reflects any access to "smartphones or the internet." *Id.* at 1895.

Frederick suggests, however, that while at common law the court's control was considered the guardian against improper jury influence, here it might have been the problem. He implies, without substantiation, that the district judge might have exerted influence over the jurors in an effort to get them to change their verdict. The allegation is untenable. We draw once again on *Rojas*. To believe, as Frederick would have us do, that during the first poll: *Rojas*, 617 F.3d at 679 (last alteration in original) (quoting *United States v. Boone*, 951 F.2d 1526, 1532 (9th Cir. 1991)). "While it is true that a juror has a right, 'when polled, to dissent from a verdict to which he [or she] has agreed in the jury room,' there is no suggestion that any one of the jurors in fact dissented from the written verdict form." *Id.* (internal citation omitted). But Frederick would have us believe not only this, but that, having instantly and unanimously decided to renounce their written verdict in the courtroom, the jurors again quickly, unanimously, and without remark did a second about-face, in response to some unsubstantiated pressure or information delivered in the jury room. The narrative strains credulity.

> [That] the jury agreed with the [court's] mistaken reading of the verdict, rather than the jury's written verdict, requires us to assume that the jurors unanimously changed their minds in a split second . . . . It is unreasonable to expect the jurors to have corrected the [court's] misreading of their verdict and to conclude that by their failure to do so [they had] assented to the misread verdict.

We do not presume that a jury is tainted. *See United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) ("[T]he burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."). *See also Smith v. Phillips*, 455 U.S. 209, 215-16, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Much less

> will we casually assume that the district judge supplied some unspecified taint. Nothing in *Dietz* changed that rule. *See Dietz,* 136 S.Ct. at 1895 (evaluating potential for prejudice based on the record of the proceedings). Frederick's counsel did not ask, when the jurors were re-polled, that they be questioned about any communications or other outside influence in the jury room and nothing on the record supports the claim. Under these circumstances, we have no grounds to find real or potential prejudice.
>
> Here a district judge misspoke when reading aloud what was clearly written on the jury form. As the Supreme Court noted in *Dietz*, "[a]ll judges make mistakes." *Id.* at 1896. This judge made reasonable efforts to correct that mistake and Frederick can point to no prejudice therefrom. We find no error in recalling the jury here, whether under the common law or under the test set out in *Dietz*.

*McShan,* 757 Fed. App'x at 457-60.

It is against this decision that McShan's Motion to Vacate must be measured.


**Ground One: Ineffective Assistance of Appellate Counsel**

**Ground Two: Double Jeopardy**

**Ground Four: Ineffective Assistance of Trial Counsel**


In his First Ground for Relief, McShan argues his appellate attorney provided ineffective assistance by failing to develop the double jeopardy argument. In his Second Ground for Relief, he argues the merits of that Double Jeopardy claim. And in the Third Ground for Relief he argues his trial attorney was ineffective for not making a double jeopardy argument.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has

9

> two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177, 1184 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

In analyzing McShan's ineffective assistance of counsel claims, the Magistrate Judge starts with the premise that it cannot be ineffective assistance to make an argument that has no merit. McShan's double jeopardy argument is without merit. He was never convicted of the lesser included offense of conspiring to distribute between 100 and 1000 grams of cocaine. Special Verdict Form No.1(a), required in order for the jury to make the finding regarding amount, is plainly checked to show the jury unanimously found the conspiracy involved a quantity of one kilogram or more (ECF No. 315, PageID 1038). That is the Special Verdict the judge misread. Judgment was never entered on the misreading and, as the Court of Appeals held, the misreading was corrected before the jury dispersed. After the misreading was cured, the jury unanimously assented on re-polling. It is unfortunate that no juror spoke up to correct the judge's reading during the first polling, but only after they had left the courtroom, but the Sixth Circuit held that was immaterial.

Because there was no conviction of the lesser included offense, it was not ineffective assistance of trial counsel or ineffective assistance of appellate counsel to fail to argue to the contrary.

Particularly with respect to appellate counsel, McShan misreads the appellate opinion in asserting it was the double jeopardy issue they did not reach because it was not developed. In fact, it was the alleged error in the failure to sever Frederick's trial from David's which was undeveloped. See *McShan,* 757 Fed. App'x, at 460-61.

Grounds One, Two, and Four should be dismissed on the merits because no double jeopardy violation occurred.

In analyzing McShan's ineffective assistance of counsel claims, the Magistrate Judge starts with the premise that it cannot be ineffective assistance to make an argument that has no merit. McShan's double jeopardy argument is without merit. He was never convicted of the lesser included offense of conspiring to distribute between 100 and 1000 grams of cocaine. Special Verdict Form No.1(a), required in order for the jury to make the finding regarding amount, is plainly checked to show the jury unanimously found the conspiracy involved a quantity of one kilogram or more (ECF No. 315, PageID 1038). That is the Special Verdict the judge misread. Judgment was never entered on the misreading and, as the Court of Appeals held, the misreading was corrected before the jury dispersed. After the misreading was cured, the jury unanimously assented on re-polling. It is unfortunate that no juror spoke up to correct the judge's reading during the first polling, but only after they had left the courtroom, but the Sixth Circuit held that was immaterial.

Because there was no conviction of the lesser included offense, it was not ineffective assistance of trial counsel or ineffective assistance of appellate counsel to fail to argue to the contrary.

Particularly with respect to appellate counsel, McShan misreads the appellate opinion in asserting it was the double jeopardy issue they did not reach because it was not developed. In fact, it was the alleged error in the failure to sever Frederick's trial from David's which was undeveloped. See *McShan,* 757 Fed. App'x, at 460-61.

Grounds One, Two, and Four should be dismissed on the merits because no double jeopardy violation occurred.

**Ground Three: Court Was Without Jurisdiction to Enter Judgment**

In his Third Ground for Relief, McShan asserts the Court lost jurisdiction once it discharged the jury.

A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7, 8 (6th Cir. 1975), quoting *DiPiazza v. United States*, 471 F.2d 719, 720 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), citing *Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

The District Court's lack of jurisdiction to enter judgment is plainly an issue which could have been raised on direct appeal but was not. Because it was not raised the, it is barred from consideration now.

Ground Four should be dismissed because it was forfeited by not being raised on direct appeal.

**Ground Five: Incorrect Use of the Amount of Heroin in Sentencing**

In his Fifth Ground for Relief McShan asserts, "Conspiracy suppose[d] to be as a whole one amount for everyone in the conspiracy for sentence purpose." In his Motion McShan explains

that a jury finding of the quantity of drugs necessary to authorize a particular sentence is required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This did not happen in this case, he claims. Indeed, he says "Here the defendant did not admit to a specific quantity nor was the jury allowed to make a factual determination on the drug quantity." (ECF No. 489, PageID 4505-06.) That claim is incorrect. In fact, in the special verdict which was re-read, the jury found Frederick McShan guilty of conspiring to distribute heroin where the "conspiracy involved a quantity of: 1000 grams (1 kilogram) or more of heroin." That is the required element of a conspiracy conviction under 21 U.S.C. §§ 841(a)(i), 841(b)(1)(B)(1) and 846. McShan cites no circuit court or Supreme Court precedent to the contrary.

In addition to failing on the merits, this Ground for Relief invites this District Court to do what it is not authorized to do under our federal system, to wit, to conduct "a de-novo [sic] review of the Sixth Circuit practice" on drug quantities. (Motion, ECF No. 489, PageID 4506.) We do not conduct review of Sixth Circuit precedent; only the Supreme Court or the Sixth Circuit sitting *en banc* is authorized to conduct such a review.

Ground Five should be dismissed with prejudice.


**Ground Six: Judge's Ex Parte Communication with Jury Violates Due Process.**


In his Sixth Ground for relief, McShan asserts the judge's *ex parte* communication with this jury, which he claims had been discharged, violated his Due Process rights.

This claim was not raised on direct appeal and is therefore forfeited. *Reed v. Farley*, 512 U.S. at 358. Moreover, it is without merit. As the Sixth Circuit held in denying McShan's re-polling assignment of error, "We do not presume that a jury is tainted. . . . Much less will we

13

casually assume that the district judge supplied some unspecified taint." *McShan,* 512 U.S. at 460. McShan presents no evidence of any prejudicial comments by the judge.

Ground Six is likewise without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Motion to Vacate be denied with prejudice and the Clerk be instructed to enter a separate judgment to that effect. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 9, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).